# Foulk *against* M'Farlane.

A fraudulent vendee gains no title to the land by a sheriff's sale, nor interest in it, notwithstanding an innocent creditor may by that very sale obtain a good title to the money. It shall be a good sale as to the creditor, to entitle him to receive the money, and yet no sale as to the fraudulent vendee, to enable him to shelter the land against pursuit.

ERROR to the Common Pleas of *Cumberland* county.

This was an action of ejectment for a tract of land by Clemens M'Farlane against Willis Foulk and Henry Burkholder.

Both parties claimed under Willis Foulk, who was the original owner of the land. The plaintiff gave in evidence the record of a judgment at the suit of Johnston Moore against Willis Foulk: No. 104, January Term 1813, regularly revived up to the 12th of April 1837. *Fieri facias*, No. 16, April Term 1839, levied on the land in dispute, which was sold on a *venditioni exponas* to August Term 1839, to Clemens M'Farlane, who received the sheriff's deed therefor.

The defendants, then, to maintain the issue on their part, gave in evidence a judgment at the suit of the Middletown Bank, No. 120, April Term 1834; an *alias fieri facias* No. 70, August Term 1836, levied on the land in dispute: *venditioni exponas*, No. 27, April Term 1837; upon which the land was sold to Henry L. Burkholder, the defendant, who received the sheriff's deed therefor. The proceeds of this sale, amounting to $335, were brought into court for appropriation; and after paying a prior judgment, $200 was appropriated to Johnston Moore's judgment, which was paid over to his attorney, leaving a balance of the judgment still due and unpaid.

To rebut the effect of this testimony, the plaintiff then called witnesses to prove that the first sale of the property to Henry L. Burkholder, was effected by reason of a fraudulent conspiracy between him and Willis Foulk, to prevent purchasers from attending the sale, or bidding for the property; and before the plaintiffs had concluded their testimony on this point, the defendants' counsel proposed to suspend any further inquiry on this point, and rest the case upon the following ground: "that Johnston Moore, the plaintiff in the judgment on which the second sale was made, is estopped from denying the validity of the first sale, on the ground that he claimed and received a large proportion of his judgment out of the proceeds of the sale to Burkholder. That Johnston Moore, having repugnant rights, his election to claim one, estops

I. — 38

[Foulk v. M'Farlane.]

him from proceeding in the other, and that the purchaser under the last sale is equally estopped with him."

The Court below thus answered the point :

Hepburn, President.—" If the whole of these proceedings had been fair and honest, this would undoubtedly be the case; but if they were fraudulent, and consequently void, they were void as to everybody not implicated in it: and Johnston Moore, as well as any one else, had a right to treat it as such, and to proceed against the property in the hands of the defendants. The defendants' point is answered in the negative."

*Biddle* and *Reed*, for plaintiffs in error, contended that the party to the judgment, who took the proceeds of the sale out of court, was estopped from denying the validity of the sale.    *Co. Lit.* 352, *a; 17 Serg. & Rawle* 364; 3 *Whart.* 422: 9 *Serg. & Rawle* 430; 7 *Serg. & Rawle* 63; 8 *Watts* 280; 1 *Rawle* 171; 18 *Johns.* 527; 12 *Serg. & Rawle* 459.

*Watts,* for defendant in error. The general principle, as stated by the plaintiff in error, is indisputable, but not at all applicable to the facts of this case. Here the fraudulent contrivance between the two defendants was conceded on the trial; the title, therefore, which they thereby acquired, is absolutely void, and could not be confirmed. The case of *Gilbert* v. *Hoffman* (2 *Watts* 66) is full to the point.

The opinion of the Court was delivered by

Sergeant, J.—The appellant contends that the first sheriff's sale, though effected by the collusion of the purchaser with the defendant, was only voidable and not absolutely null and void, and that Johnston Moore, having elected as judgment creditor, to receive his proportion of the proceeds of sale, is thereby estopped from treating that sale as void, and proceeding against the land in the hands of the purchaser.

Whether the sale is to be termed absolutely null and void to all intents and purposes, or only void as respects Moore, in case he determines so to treat it, can be of little importance in the ascertainment of the rights of the parties. In either case, it ceases to be an obstacle in his way. The real question is, whether he has, by the receipt of the money, precluded himself from asserting his claim against the land. It must be admitted, that had Moore been in any way connected with the alleged fraud, it would have barred him. That, however, is not pretended: he received the money under an appropriation by law to his use, innocently, and even ignorantly of the transaction, so far as appears. There could be no *mala fides* in his thus receiving the money. He never could be compelled to refund it. It was awarded to him by the acts of others, over which he exercised no control. I do not think, there-

[Foulk v. M'Farlane.]

fore, his receiving the money, under these circumstances, can be considered as an election, or set up as an estoppel against following the land into the hands of a fraudulent vendee for the purpose of realizing the balances due to him, though, as in *Stroble* v. *Smith,* (8 *Watts* 280) it might cure irregularity in the proceedings where there is no fraud.　The fraudulent vendee gains no title to the land by the sale, nor interest in it, notwithstanding an innocent creditor may, by that very sale, obtain a good title to the money. It shall be a good sale as to the creditor, to entitle him to receive the money, and yet no sale as to the fraudulent vendee, to enable him to shelter the land against pursuit.　Nor would the policy of the law, which abhors fraud, be promoted by permitting such a defence to the purchaser.　All the avenues that facilitate the detection and overthrow of fraud, should be kept open and free from the interposition of bars and estoppels.　The doctrine in *Gilbert* v. *Hoffman,* (2 *Watts* 66) goes to the full extent of the present case, in deciding, that a sale effected by actual fraud is as no sale, and can produce no legal effect on innocent persons.

Judgment affirmed.